UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WILMA D. GURBEL,

                    Plaintiff,

v.                                                    Case No.  5:07-cv-243-Oc-10GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                    Defendant.
_____/

## ORDER

        Plaintiff appeals from a final decision of the Commissioner of Social Security

("the Commissioner") denying her applications for disability insurance benefits and

supplemental security income. (Doc. 1.) The Commissioner has answered (Doc. 8), and

both parties have filed briefs outlining their respective positions. (Docs. 11 & 15.)  For

the reasons discussed below, the Commissioner's decision is due to be **REVERSED**

and **REMANDED** under sentence four of 42 U.S.C. §405(g).

## I.  PROCEDURAL HISTORY

        On August 20, 2003 Plaintiff filed an application for a period of disability and

disability insurance benefits, alleging a disability onset date of February 28, 2000. (R.

56-8.)  Plaintiff's applications were denied initially and upon reconsideration. (R. 37-42.)

Thereafter, Plaintiff timely pursued her administrative remedies available before the

Commissioner and requested a hearing before an Administrative Law Judge ("ALJ") (R.

25.) The ALJ conducted Plaintiff's administrative hearing on June 8, 2005. (R. 236-72.)

The ALJ issued a decision unfavorable to Plaintiff on October 17, 2005 (R. 13-23.)

Plaintiff's request for review of the hearing decision by the Social Security Administration's Office of Hearings and Appeals was denied.  (R. 5-8A.)  Plaintiff then appealed to this Court. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] <u>See</u> 42 U.S.C. § 405(g).

[2] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] <u>Foote</u>, 67 F.3d at 1560; *accord,* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. See Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

## III. SUMMARY OF THE CASE

At the time of the ALJ's decision, Plaintiff was fifty six (56) years old.  (R. 416.) She has a GED (R. 74) and previous work experience as a cashier, clerk, assistant manager in home furnishings store, driver, sorter, and a merchandiser. (R. 69.)  Plaintiff contends that she has been unable to work since February 28, 2000 due to high blood pressure, asthma, chronic pinched nerve in her neck and degenerative disc disease. (R. 68)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff has degenerative disc disease of the lumbar and cervical spines, asthma, obesity, peripheral

---

[18] Walker at 1003.

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

polyneuropathy, hypertension, stress bladder incontinence, and mild right carpal tunnel syndrome.  (R. 16.)  However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.   (Id.)

The ALJ then found that *prior* to February 2, 2004 Plaintiff retained the RFC to perform substantially all of the full range of light work. (R. 18.)   Specifically, the ALJ found that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday.  (Id.)  The ALJ found no limitations in pushing or pulling.  (Id.) Additionally, the ALJ found no postural, manipulative, visual, communicative, or environmental limitations, other than avoiding concentrated exposure to fumes, dusts, odors, gases, and poor ventilation.  (R. 18-19.)

The ALJ, however, made a different RFC *after* February 2, 2004 based on the following pieces of evidence: (1) a February 2, 2004 MRI of the lumbar spine that showed actual spinal stenosis; (2) the finding in February 2004 by Richard Smith, M.D. that Plaintiff has lower back and neck pain due to both bulging discs and spinal stenosis and his opinion that Plaintiff "should avoid prolonged standing, as well as repetitive bending and the excessive turning of her neck"; and (3) an April 2005 medical source statement by Asma Syed, M.D. in which Dr. Syed opined that Plaintiff "could lift or carry 20 pounds occasionally and 10 pounds frequently but stand or walk for only 2 hours in an 8-hour workday, with frequent breaks." (R. 19.)

Based on this evidence, the ALJ concluded that *after* February 2, 2004 Plaintiff retained the RFC to perform a significant range of light work.  (R. 19.)  Specifically, the

6

ALJ found that Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently; stand or walk for about 2 hours in an 8-hour workday with frequent breaks; and sit without limitation, but with the frequent alternating of sitting and standing to relieve pain or discomfort.  (Id.)  The ALJ found limitations in pushing or pulling with the upper extremities and limited Plaintiff to occasional stair climbing, balancing, stooping, kneeling, crouching and crawling.  (Id.)  Additionally, the ALJ found that Plaintiff was limited to handling no more than 10 pounds at a time, and of only frequently (but not constantly) reaching in all directions.  (Id.)  The ALJ found no visual, communicative, or environmental limitations, except of avoiding concentrated exposure to fumes, dusts, odors, gases, poor ventilation, humidity, wetness, vibration, and hazards such as machinery and heights.  (Id.)  The ALJ further found that Plaintiff has no limitations against exposure to temperature extremes while in air-conditioning or to noise.  (Id.)

Using Medical-Vocational Rules 202.15 and 202.07 as a framework, in conjunction with the testimony of a vocational expert, the ALJ found that *prior* to February 2, 2004, Plaintiff could perform her past relevant work as it is generally performed in the national economy and that *as of* February 2, 2004, she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 21.) Accordingly, the ALJ concluded that Plaintiff was not disabled.  (Id.)

Because this appeal focuses on two discrete issues – i.e. the ALJ's rejection of the opinions of Dr. Syed and Dr. Smith – the Court will discuss the medical history relevant to these limited challenges in the discussion section below.

## IV. <u>DISCUSSION</u>

Plaintiff argues that the ALJ erred by improperly rejecting the opinions of Dr. Syed and Dr. Smith, two of Plaintiff's treating physicians.

### A.    <u>Dr. Syed</u>

The parties do not dispute that the ALJ relied on a misstatement of Dr. Syed's opinion in her RFC analysis.  Specifically, the ALJ improperly stated that Dr. Syed opined that Plaintiff could lift or carry 10 pounds frequently, when in fact, Dr. Syed found that she could frequently lift less than 10 pounds.  (R. 19, 213. )  Based on this misstatement, the ALJ improperly found that Plaintiff could frequently lift or carry 10 pounds. (<u>Id</u>.)

While acknowledging this error, the Commissioner contends that the misstatement constitutes harmless error because the vocational expert identified sedentary jobs whose exertional requirements accommodate lifting less than ten pounds and are less demanding than light work.  Thus, according to the Commissioner, remanding the case for the ALJ to correct the misstatement would not change the administrative result because the jobs identified by the vocational expert would not require the frequent lifting of ten pounds or more.

Plaintiff correctly points out that if Plaintiff was limited to sedentary work, due to her advanced age, the ALJ was required to comply with the Medical Vocational Guidelines, which provide that if an advanced age claimant is limited to only sedentary work, the ALJ can find that claimant's skills are transferable to skilled or unskilled sedentary work "only if the sedentary work is so similar to [the claimant's] previous work

8

that [the claimant] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."[22]  Thus, the Commissioner bears the burden to establish not only that Plaintiff has skills that she could transfer to the sedentary jobs identified, but also that the jobs were so similar to her past work that she could be expected to perform them at a high degree of proficiency with minimal job orientation.[23] This is so because the Regulations implicitly recognize a direct relationship between age and the likelihood of employment - i.e. as a claimant ages, it becomes increasingly difficult for the claimant to adapt to new work environments and to successfully compete with younger, healthier, similarly-skilled workers.[24]

In the instant case, the ALJ identified the semi-skilled, sedentary jobs of check cashier, telemarketer and information clerk. (R. 266-68.)  The vocational expert testified that Plaintiff had transferable skills to these jobs – i.e., ability to run a cash register, ability to deal with the public and sell, and getting experience to people from the sales experience as to products, directions and costs. (Id.)  However, other than asking the vocational expert to assume "we had an individual who is between the ages of 51 and 56," the ALJ never raised with the vocational expert the significance of Plaintiff's advanced age and the resulting vocational adjustment issue.  Additionally, the ALJ did not ask the vocational expert any questions designed to elicit information about the level of vocational adjustment that would be necessary for Plaintiff to perform the jobs of

---

[22] 20 C.F.R. §404.1568(d)(4); Webster v. Barnhart, 187 Fed. Appx. 857, 859 (10th Cir. 2006).

[23] See Webster, 187 Fed.Appx. at 859.

[24] Dennis G. Katz, Transferability of Skills and the Medical-Vocational Guidelines Under the Social Security Act, 1998 Fed. Cts. L. Rev 5, [2.8] (Oct. 1998)<http://www.fclr.org/1998fedctslrev5.htm>; see also, Tom v. Heckler, 779 F.2d 1250, 1257 n.11 (7th Cir. 1985).

9

check cashier, telemarketer and information clerk given her past work.[25] Indeed, the Tenth Circuit has held that "[w]hen the transferability of skills arises with respect to a claimant of advanced age, the ALJ must present the vocational expert with a hypothetical that asks whether or not the skill is transferable with little or no vocational training or job orientation."[26]

The ALJ failed to make the required specific findings. Instead, the ALJ made only the very general finding that "[b]ased on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, educational background, work experience, and residual functional capacity, . . . as of February 2, 2004, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy." (R. 21.)

The logic of the Commissioner's harmless error argument thus fails because the Commissioner is attempting to have it both ways.  If the ALJ's RFC assessment of light work was accurate, then Dr. Syed's lifting restriction contradicts the ALJ's RFC and the ALJ's failure to articulate any reason for deviating from Dr. Syed's opinion requires reversal.[27]  Conversely, if the Commissioner attempts to get around this error by arguing that the error did not make any difference because the vocational expert testified about sedentary jobs, then the ALJ was required to make certain findings of fact with regard to

---

[25] See Webster, 187 Fed.Appx. at 860.

[26] Nielson v. Sullivan, 992 F.2d 1118, 1121 (10th Cir. 1993).

[27] See Phillips v. Barnhart, 357 F.3d 1232 (11th Cir. 2004)(holding that testimony of treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary and when electing to disregard the opinion of a treating physician, the ALJ must clearly articulate the reasons for doing so.)

transferability of skills, which as discussed above, she failed to do.  Either way, the case must be reversed for further consideration.

### B.    Dr. Smith

This is also another reason for reversal of this matter. Plaintiff argues that the ALJ failed to articulate any basis for not crediting Dr. Smith's February 9, 2004 opinion – i.e. that Plaintiff should do no excessive turning of her neck.  (R. 192-93.)  While noting Dr. Smith's opinion, the ALJ did not discuss the weight she was according the opinion, nor did she include any limitation in the RFC regarding neck turning.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[28]  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[29]

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.[30]  Where a treating physician has merely made conclusory statements, the

---

[28] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records.").  See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[29] 20 C.F.R. § 404.1527(d)(2).

[30] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the
(continued...)

ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[31]

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.[32]  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.[33]

Upon a review of the ALJ's decision, as well as an examination of the medical records at issue, it is evident that the ALJ failed to properly consider the opinion of Dr. Smith as a treating physician. The ALJ correctly noted Dr. Smith's February 9, 2004 opinion that Plaintiff should not excessively turn her neck.  Indeed, the ALJ stated that it was one of the reasons why Plaintiff's RFC was different as of February 2, 2004. However, without stating any reason for discounting Dr. Smith's opinion, the ALJ did not include a neck turning limitation in her RFC analysis.   Moreover, the ALJ failed to analyze whether a neck turning limitation would limit Plaintiff's ability to perform a wide

---

(...continued)
physician was unsure of the accuracy of his findings and statements).

[31] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

[32] 20 C.F.R. § 404.1527(d).

[33]Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527(d)(2).

range of work.  Accordingly, for this reasons, this matter is due to be remanded to the Commissioner for proper consideration of Dr. Smith's opinions as a treating physician.

## V.  CONCLUSION

In view of the foregoing, the decision of the Commissioner is due to be **REVERSED and REMANDED** under sentence four of 42 U.S.C. § 405(g) to the Commissioner, for an Administrative Law Judge to properly consider the opinions of Dr. Syed and Dr. Smith, conduct additional proceedings consistent with this order and to conduct any additional proceedings the Commissioner deems appropriate. The Clerk is directed to enter final judgment in favor of the Plaintiff consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 22, 2008.

GARY R. JONES
United States Magistrate Judge

Copies to:
      All Counsel